UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE ROYAL STREET BISTRO,                          CIVIL ACTION
LLC, ET AL.

                                                    NO. 21-2285

                                                    SECTION "R" (3)

## ORDER AND REASONS

Before the Court is an emergency motion for a stay by appellants Royal Street Bistro, LLC ("RSB") and Picture Pro, LLC ("Picture Pro") as lessees (collectively "Tenants"), and Susan Hoffman, the sole equity holder of debtor Royal Alice Properties, LLC.[1]  Appellants move under Rule 62(b) of the Federal Rules of Civil Procedure and Rule 8007(b) of the Federal Rules of Bankruptcy Procedure, for a stay of the enforcement of the bankruptcy court's order dated November 30, 2021, and the subsequent orders issued on January 10, 2022, pending appeal of the November 30 order.  Appellee Dwayne M. Murray, the Chapter 11 Trustee for the bankruptcy estate, opposes the motion.[2]

For the following reasons, the Court denies the motion for a stay.

---

[1]     R. Doc. 4.   Except where otherwise indicated, record citations correspond to the civil case before this Court, *i.e.*, Case No. 22-cv-2285.
[2]     R. Doc. 8.

## I.      BACKGROUND

This appeal arises out of proceedings in the United States Bankruptcy Court for the Eastern District of Louisiana.  On August 29, 2019, debtor Royal Alice Properties filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code.[3]  A month later, the debtor also instituted an adversary proceeding in the bankruptcy court against secured creditor AMAG Inc., seeking a determination of the validity, extent, and priority of AMAG's lien on properties owned by the debtor.[4]  Both the debtor and AMAG filed cross-motions for summary judgment.[5]  On November 25, 2020, the bankruptcy court granted AMAG's motion for summary judgment, and denied debtor's motion for summary judgment.  *In re Royal Alice Props., LLC*, 625 B.R. 146, 166 (Bankr. E.D. La. 2020).  On September 7, 2021, this Court dismissed Hoffman's attempted appeal of the bankruptcy court's summary-judgment order, and later denied her motion for reconsideration of that dismissal.  *See Royal Alice Props., LLC v. AMAG, Inc.*, No. 20-3346, 2022 WL 278926, at *1-4 (E.D. La. Jan. 31, 2022).

---

[3]      *In re Royal Alice Props., LLC*, No. 19-bk-12337, R. Doc. 1 (Chapter 11 Voluntary Bankruptcy Petition).

[4]      *Royal Alice Props., LLC v. AMAG, Inc.*, No. 19-ap-1133, R. Doc. 1 (Complaint for Declaratory Relief).

[5]      *Id.*, R. Docs. 51 & 56.

On September 4, 2020, while the adversary proceeding remained pending, the bankruptcy court ordered the appointment of a Chapter 11 trustee. *In re Royal Alice Props., LLC*, No. 19-12337, 2020 WL 5357795, at *12 (Bankr. E.D. La., Sept. 4, 2020).  The Trustee, Dwayne Murray, has litigated on behalf of the bankruptcy estate since that time.

On July 28, 2021, the Trustee filed a motion in the bankruptcy court to approve (i) a settlement with AMAG, and (ii) a sale of the debtor's real property as part of that settlement.[6]  At issue are three parcels of real property on Royal Street in New Orleans, currently occupied by appellant-Tenants RSB and Picture Pro, which lease the properties for business use, and the debtor's sole equity holder, Susan Hoffman, who uses the property as her residence.[7]  In its motion, the Trustee sought approval of a settlement and sale that would allow the bankruptcy estate to receive and sell the properties, free and clear of appellants' leases, at private auction within forty-five days after the bankruptcy court's approval of the sale motion and a separately filed bid-procedures motion.  *See In re Royal Alice Props., LLC*, No. 19-12337, 2021 WL 5711988, at *2 (Bankr. E.D. La. Nov. 30, 2021).

---

[6]    *Royal Alice Props.*, No. 19-bk-12337, R. Doc. 418.
[7]    R. Doc. 4-1 at 7.

On September 3, 2021, Tenants RSB and Picture Pro filed a motion for adequate protection of their interest in the property, under 11 U.S.C. § 363(e).[8]  Specifically, the Tenants sought to remain in possession of the property through the  end of their purported twenty-year leases, *i.e.*, through December 31, 2038.[9]  Tenants also asked the court to require the debtor to explicitly assume or reject the leases, because a rejection would trigger statutory protection of the Tenants' possessory interests under 11 U.S.C. § 365(h).[10]

On November 30, 2021, the bankruptcy court granted the Trustee's motion, approving the settlement and sale, and denied the Tenants' motion for adequate protection and for a requirement that the debtor assume or reject the leases. *Royal Alice Props.*, 2021 WL 5711988, at *14.  On December 9, 2021, the Tenants and Ms. Hoffman filed a notice of appeal of the bankruptcy court's November 30 order, thereby initiating proceedings in this Court.[11]  They simultaneously filed a motion in the bankruptcy court to stay enforcement of the November 30 order, pending appeal.[12]  On January 10, 2022, the bankruptcy court entered final orders approving the settlement

---

[8]     *Id.*, R. Doc. 455.
[9]     *Id.* ¶ 40.
[10]    *Id.* ¶¶ 48-50.
[11]    R. Doc. 1.
[12]    *Royal Alice Props.*, No. 19-bk-12337, R. Doc. 585.

and proposed sale of the property,[13] approving the bid procedures, and setting the auction sale of the property for February 22, 2022.[14]  Two days later, the bankruptcy court held a hearing on the Tenants' and Ms. Hoffman's motion to stay, and denied the motion for reasons stated on the record.[15]

On January 19, 2022, the Tenants and Ms. Hoffman filed an emergency motion in this Court, seeking to stay the bankruptcy's court's orders pending appeal.[16]  Appellants contend that a stay is warranted because the sale will cause irreparable harm to Tenants and Ms. Hoffman, and because they have demonstrated a substantial case as to the merits of the appeal.[17]  Appellee, the Trustee, opposes the motion, arguing that appellants should not be granted a stay because, *inter alia*, they have not shown that the sale will cause them irreparable harm, and because they are not likely to succeed on the merits.[18]  The parties also dispute the adequacy of the security offered by appellants in support of their request for a stay.

The Court considers the parties' arguments below.

---

[13]   *Id.*, R. Doc. 607.

[14]   *Id.*, R. Doc. 608 at 4.

[15]   R. Doc. 8-9 at 36-40 (Hr'g Tr. at 36:7-40:23).

[16]   R. Doc. 4.

[17]   R. Doc. 4-1 at 11-12.

[18]   R. Doc. 8.

## II.   LEGAL STANDARD

The Court applies the same standard of review to a bankruptcy appeal as the Court of Appeals does in reviewing a district court judgment. *See* 28 U.S.C. § 158(c)(2).  Accordingly, the Court reviews the bankruptcy court's conclusions of law *de novo*, findings of fact for clear error, and mixed questions of law and fact *de novo*. *See In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).  "The decision of a bankruptcy court to deny a stay pending appeal [is] reviewed for abuse of discretion." *18 Audubon Place, LLC v. SBN V FNBC LLC*, No. 18-9791, 2018 WL 5831231, at *1 (E.D. La. Nov. 7, 2018) (citing *In re Permian Producers Drilling, Inc.*, 263 B.R. 510 (W.D. Tex. 2000)).

## III.   DISCUSSION

Under Rule 8007(b) of the Federal Rules of Bankruptcy Procedure, a party may move in the district court to stay a judgment, order, or decree of the bankruptcy court, pending appeal.  Fed. R. Bankr. P. 8007(b)(1).  "[T]he district court's decision to grant or deny a stay pending appeal rests in the discretion of that court." *In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987).  In exercising its discretion, the Court considers four criteria:

    (1)    whether the movant has made a showing of likelihood of success on the merits;

(2)    whether the movant has made a showing of irreparable injury if the stay is not granted;

(3)    whether the granting of the stay would substantially harm the other parties; and

(4)    whether the granting of the stay would serve the public interest.

*Id.* (footnote omitted) (citing *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)).  The party seeking the stay bears the burden of establishing these criteria.  *Ruiz*, 666 F.2d at 856 (citing *Drummond v. Fulton Cnty. Dep't of Fam. & Child.'s Servs.*, 532 F.2d 1001, 1002 (5th Cir. 1976) (per curiam)).

As to likelihood of success on the merits, it is not enough that the movant's chance of prevailing be merely "better than negligible."  *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)).  As the Fifth Circuit has explained, "in the mine run of appeals, '*likelihood* of success remains a prerequisite,'" *id.* (emphasis in original) (quoting *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 361 (5th Cir. 2013) (per curiam)), and, accordingly, "presentation of a substantial case alone is not sufficient," *id.* (cleaned up) (quoting *Wildmon v. Berwick Univ. Pictures*, 983 F.2d 21, 23 (5th Cir. 1992) (per curiam)).  Only in "a limited subset of cases" does the Fifth Circuit lower the "likelihood" bar.  *Id.*  Specifically, a "movant need only present a substantial case on the merits if (1) a *serious*

7

*legal question* is involved[,] and (2) the balance of the equities weighs *heavily* in favor of granting the stay." *Id.* (cleaned up) (emphasis in original) (quoting *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439 (5th Cir. 2001)).

### A.    Balance of the Equities

The Court must first decide which standard to apply to its determination of whether movants have shown that they may succeed on the merits.  Because the stringency of the "success on the merits" standard turns in part on a "balance of the equities (i.e.[,] consideration of the other three factors)," *Ruiz*, 666 F.2d at 857, the Court first evaluates appellants' motion with respect to the other three stay factors: (i) irreparable harm, (ii) substantial harm to other parties, and (iii) the public interest.  *See In re First S. Sav. Ass'n*, 820 F.2d at 709.  If these considerations do not weigh "heavily" in favor of granting a stay, movants are not entitled to the relaxed "substantial case" standard, and must instead show a *likelihood* of success on the merits.  *Tex. Democratic Party*, 961 F.3d at 397.

#### 1.  Irreparable Harm

As to irreparable harm, the Court finds that a sale of the property that movants currently occupy poses a genuine risk of irreparable harm.  The parties represent that Hoffman has lived on the property for more than 25

8

years, and that RSB's restaurant has been operating successfully on the property for more than 16 years.[19]  "The deprivation of an interest in real property constitutes irreparable harm."  *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (quoting *Third Church of Christ, Scientist, of N.Y.C. v. City of New York*, 617 F. Supp. 2d 201, 215 (S.D.N.Y. 2008), *aff'd*, 626 F.3d 667 (2d Cir. 2010)).

But the gravity of this risk of harm is tempered by the fact that the movants may not be forced to leave the property.  For instance, the Tenants and Ms. Hoffman may attempt to negotiate new leases with the eventual purchaser of the property.  Indeed, if RSB's restaurants are as successful and popular as movants assert,[20] then any profit-maximizing purchaser will at least consider permitting RSB's continued occupancy.  And of course, the movants may also bid on the property themselves.  If either of these efforts succeeds, movants' interests in the property will remain intact.

Nonetheless, movants face a real risk of dispossession of their property.  This type of deprivation is serious, and cannot be easily "undone through monetary remedies."  *Paulsson Geophysical Servs., Inc. v. Sigmar*,

---

[19]   R. Doc. 4-1 at 11-12.

[20]   *See id.* at 17.

529 F.3d 303, 312 (5th Cir. 2008).  For this reason, the irreparable-harm factor weighs moderately in favor of a stay.

### 2.   *Harm to Other Parties, and the Public Interest*

The other two factors, however, do not.  Granting a stay poses a substantial risk of harm to the other parties, including the bankruptcy estate and AMAG, the secured creditor.  With the sale, the Trustee seeks to settle AMAG's secured claim against the estate, which totals over $6 million.  *See Royal Alice Props.*, 2021 WL 5711988, at *2.  A stay would delay the sale of the property and, thereby, the effectuation of that settlement, allowing interest, legal fees, and administrative costs to accrue all the while.  *See In re 473 W. End Realty Corp.*, 507 B.R. 496, 508 (Bankr. S.D.N.Y. 2014) ("There is no doubt that a stay pending appeal, which will cause increased interest accruing on the judgment and real estate tax debts and additional expenses to be incurred by [the nonmoving party] . . . would result in substantial harm to [that party]." (cleaned up) (citations omitted)).  And critically, the movants' litigation conduct throughout these proceedings does not inspire confidence that their appeal will be efficient or inexpensive for the Trustee or AMAG.  The movants are prone to excessive motion practice and, at times, obstructive behavior, including, most recently, an attempt to deny prospective buyers access to the contested property unless and until this

Court denies their motion to stay—a maneuver that required emergency intervention by the bankruptcy court.[21]   The Court finds that staying enforcement of the bankruptcy court's order would "substantially harm the other parties." *In re First S. Sav. Ass'n*, 820 F.2d at 709.

Furthermore, granting the stay does not serve the public interest, which lies in "seeing the bankruptcy process not just run its course but to do so with due speed." *In re Frantz*, 534 B.R. 378, 390 (Bankr. D. Idaho 2015). As another section of the Court has explained in denying a stay pending a bankruptcy appeal, "the public is . . . served by meaningful relief to creditors when warranted under the law and facts of a particular case." *18 Audubon Place, LLC*, 2018 WL 5831231, at *5.

Having considered three of the four factors that guide this Court's discretion in ruling on the motion for a stay, the Court finds that the balance of equities does not weigh in favor—much less "*heavily*" in favor—of granting a stay.


**B.    Serious Legal Question**

Moreover, the parties' appeal does not present a "serious legal question." *Tex. Democratic Party*, 961 F.3d at 397.   The Fifth Circuit has

---

[21]    *See Royal Alice Props.*, No. 19-bk-12337, R. Doc. 629.

explained that a dispute may involve a serious legal question if "the results of th[e] dispute" have "far-reaching effects," or if the dispute presents "public concerns to anyone" besides the parties involved. *Wildmon*, 983 F.2d at 24. For instance, the Fifth Circuit has held that "[w]hether Medicare and Medicaid payments constitute federal financial assistance within the meaning of the Rehabilitation Act is a serious legal question that could have a broad impact upon federal/state relations." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983).

Unlike the issue presented in *Baylor*, the legal questions involved in this case are not of meaningful public concern. As detailed more thoroughly in the Court's merits analysis below, the substance of this appeal exclusively concerns granular matters of interpretation and application of the Bankruptcy Code and related caselaw. Indeed, even as the movants attempt to sensationalize the import of their appeal, they are able to raise the stakes only so high. Specifically, the movants argue that the bankruptcy court's order "abolish[es] the rights of lessees under recorded leases in Chapter 11, with ramifications far beyond this case."[22] By their own admission, then—setting aside the dubious claim that any rights have been "abolished"—this appeal concerns, at most, the narrow universe of cases involving "lessees

---

[22]    R. Doc. 4-1 at 10.

under recorded leases in Chapter 11." This context-specific bankruptcy issue is a far cry from questions of "federal/state relations," or other matters of general public concern. *Cf. Fed. Deposit Ins. Corp. v. Belcher*, No. 19-12561, 2020 WL 242781, at *6 (E.D. La. Jan. 16, 2020) (finding no serious legal question in a case that would "decide[] an important aspect of law for accounting firms"); *Vine v. PLS Fin. Servs., Inc.*, No. 18-450, 2019 WL 4257108, at *6 (E.D. Tex. Sept. 9, 2019) (finding no serious legal question in a case involving a contract dispute concerning whether defendant waived its right to arbitration); *In re Ingram*, No. 12-431, 2012 WL 6840538, at *2 (E.D. La. Apr. 30, 2012) (finding no serious legal question in a case involving whether the government's protocoled review of emails obtained via a third-party search warrant infringed on the attorney-client privilege). The Tenants and Ms. Hoffman's appeal in this case therefore does not involve a serious legal question.

Because the balance of the equities does not weigh heavily in favor of a stay, and because the movants' appeal does not involve a serious legal question, the Tenants and Ms. Hoffman are not entitled to the relaxed "substantial case" standard, and must instead show a *likelihood* of success on the merits. *Tex. Democratic Party*, 961 F.3d at 397.

13

### C.    Likelihood of Success on the Merits

The movants have not shown a likelihood of success on the merits. Indeed, in their motion for a stay, movants stop short of asserting that they meet this higher bar, and instead merely claim that they have demonstrated "serious questions going to the merits,"[23] and "a more than negligible basis for success on the merits."[24]  In fact, movants seem to knowingly embrace this lower standard, based on their urging that this Court apply a "sliding scale" test from the Third Circuit, which purportedly "reduce[s]" the "need to show likelihood of success on appeal . . . to the extent the harm is irreparable.[25]  *See In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015).  But the Third Circuit's sliding scale is not applicable here, in light of the framework prescribed by and used within the Fifth Circuit for decades.

In any case, even if movants purported to argue that they have shown a likelihood of success on the merits, this Court finds that they have not.  The movants' most "serious" concern as to the merits pertains to purportedly inconsistent authority on a statutory question regarding two provisions of the Bankruptcy Code.  Specifically, movants contended in the bankruptcy court that the Trustee may not exercise his § 363(f) authority to sell the

---

[23]     *Id.* at 12.
[24]     *Id.* at 24.
[25]     *Id.* at 14-15.

property free and clear of any interests (*i.e.*, the leases), without first "reject[ing]" the leases and thereby triggering the lessee protections of § 365(h). Both the Seventh and Ninth Circuits have rejected this proposition, and have held that a § 363 free-and-clear sale may happen without a § 365 rejection, because, simply put, they are "not the same thing." *In re Spanish Peaks Holdings II, LLC*, 872 F.3d 892, 899 (9th Cir. 2017); *see also Precision Indus. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 547 (7th Cir. 2003). The bankruptcy court's order is consistent with these persuasive authorities from two sister circuits. And appellants have not identified any contrary authority from the Fifth Circuit or any other court of appeals.

Instead, appellants assert that the bankruptcy court should have followed the lead of a case from the Southern District of New York.[26] *See Dishi & Sons v. Bay Condo LLC*, 510 B.R. 696, 708 (S.D.N.Y. 2014). But *Dishi* appears to be the outlier; appellants give no example of another court following, or even favorably citing, *Dishi*, and this Court is aware of no such case in this circuit. And even if the *Dishi* case held any weight, the identification of a contrary authority from another jurisdiction is insufficient to demonstrate a likelihood of success on the merits of an appeal.

---

[26]     *Id.* at 18-20.

Nor is it sufficient to argue that the bankruptcy court's holding is "without any precedent" in certain narrow senses.[27]  The Tenants and Ms. Hoffman argue that the bankruptcy court's order was unprecedented in two ways.  First, movants contend that the lessees in *Spanish Peaks* and *Precision Industries* did not move for adequate protection under § 365(h), and so those cases, which allowed a § 363(f) free-and-clear sale, do not support the bankruptcy court's holding because here, the Tenants and Ms. Hoffman expressly invoked § 365(h) and sought protection of their occupancy by filing an adequate-protection motion.[28]  This argument fails. Both *Spanish Peaks* and *Precision Industries* expressly considered the relationship between § 363(f) and § 365(h), and found that they did not conflict.  Movants give no reason, much less legal authority, for the proposition that this procedural distinction somehow undermines the persuasiveness of those courts' holdings.

Second, movants argue that the bankruptcy court acted without precedent when it found that the sale of the property is authorized by non-bankruptcy Louisiana law.[29]  In arguing this point, the Tenants and Ms.

---

[27]   *Id.* at 20.
[28]   *Id.* at 20-21.
[29]   *Id.* at 21.

Hoffman rely exclusively on citations to *Dishi*.[30]  For the reasons given above, *Dishi* does not carry movants' burden to show a likelihood of success on the merits.

Finally, movants contend that the settlement and sale is a forbidden *sub rosa* plan of reorganization, and that the Trustee is short-circuiting certain Chapter 11 requirements, in violation of *In re Braniff Airways, Inc.*, 700 F.2d 936 (5th Cir. 1983).[31]  To show that the sale is a plan *sub rosa* that improperly sidesteps Chapter 11, the Tenants and Ms. Hoffman must identify which provisions of Chapter 11 have been avoided.  To this end, movants raise two issues.  First, citing 11 U.S.C. § 365 and *Florida Department of Revenue v. Picadilly Cafeterias, Inc.*, 554 U.S. 33 (2008), they argue that the Trustee is required to accept or reject the leases in a reorganization plan.  But the movants do not explain how or why these authorities impose such a requirement, and this Court's review of the statutory text does not reveal any such mandate.  On the contrary, as the bankruptcy court explained, "[n]othing in the text of § 365 supports that belief." *Royal Alice Props.*, 2021 WL 5711988, at *9.

---

[30]      *Id.* at 21-22.
[31]      *Id.* at 22-24.

Second, movants argue that the sale is in essence a liquidating plan, which requires a vote that would include Ms. Hoffman as the sole equity holder, as well as any unsecured creditors.[32]  But the bankruptcy record indicates that the estate has no unsecured creditors,[33] a fact that the bankruptcy court relied on in granting the Trustee's motion for a § 363 sale. *See id.*  Movants do not identify any unsecured creditors, nor specify whether those purported creditors are indeed creditors of the *estate*, rather than of Ms. Hoffman as an individual.  Nor have the movants shown that any such vote would somehow protect their occupancy of the properties, especially as to Ms. Hoffman, who, under the absolute priority rule, cannot maintain her equity interest without the senior creditor's (*i.e.*, AMAG's) consent.  *See* 11 U.S.C. § 1129(b)(2); *Nw. Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988).  Accordingly, the Tenants and Ms. Hoffman have not shown that they are likely to succeed on the merits of their claim that the settlement and sale constitute a *sub rosa* plan that improperly sidesteps the requirements of Chapter 11.

---

[32]   *Id.* at 23.

[33]   R. Doc. 4-6 at 83-84 (Hr'g Tr. at 1-88:21 to 1-89:1) (Hearing Testimony of Trustee Dwayne Murray).

For all of these reasons, the Court finds that the Tenants and Ms. Hoffman have not met their burden to show that they will likely succeed on the merits of any aspect of their appeal.

In sum, the only stay criterion that weighs in favor of granting the stay is the risk of irreparable injury. All other factors weigh against the stay. Furthermore, the security offered by the movants does not remedy the insufficiency of their showing as to the multiple factors that weigh against the stay. Because the four criteria guiding the Court's discretion weigh against granting appellants' motion, the Court finds that the bankruptcy court did not abuse its discretion in denying the Tenants and Ms. Hoffman's motion for a stay pending appeal. The Court therefore denies appellants' emergency motion in this Court.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES appellants' motion for a stay pending appeal.

New Orleans, Louisiana, this __3rd__ day of February, 2022.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE